**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| DARNELL A. CAMPBELL AND | § | |
| JENNIFER CAMPBELL, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | Civil Action No.  SA-14-CV-723-XR |
| v. | § | |
| | § | |
| WELLS FARGO, N.A., | § | |
| | § | |
| *Defendant.* | § | |

# O R D E R

On this day the Court considered Defendant's Motion to Dismiss for Failure to State a Claim (docket no. 6).  For the following reasons, the Court GRANTS the motion.

## I.      BACKGROUND

Plaintiffs Darnell Campbell and Jennifer Campbell filed a state court petition with an application for temporary restraining order in the 37th Judicial District Court of Bexar County, Texas, on August 4, 2014. (Docket no. 1, Ex. A).  By their lawsuit, the Campbells sought to block a foreclosure sale of their property scheduled for August 5, 2014.

The Campbells purchased the property at 6423 Cougar Village, San Antonio, Texas 78254 (the "Property") on October 16, 2006.  To purchase the Property, the Campbells received a loan for $103,686 from Defendant Wells Fargo, N.A., in exchange for executing a promissory note (the "Note") and granting a deed of trust (the "Deed of Trust") (collectively, the "Loan") in favor of Wells Fargo.  The Campbells subsequently defaulted on the Loan.  The Campbells never cured their default.  Wells Fargo initiated foreclosure proceedings.  The Campbells allege their

loan is secured by the United States Department of Veterans Affairs (VA).[1]  The Campbells allege Wells Fargo never notified the VA it instituted foreclosure proceedings, adding that customer service at the VA had no knowledge of the foreclosure proceedings on the Property. The state court granted the Campbells a temporary restraining order on August 4, 2014, stopping the scheduled foreclosure sale.  Wells Fargo removed the case to federal court on August 18, 2014.[2]  Wells Fargo then filed a motion to dismiss the Campbell's lawsuit for failure to state a claim.  The Campbells have not responded.

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim for relief must contain (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought."  FED. R. CIV. P. 8(a).  In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed favorably to the plaintiff.  *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993).  To survive a 12(b)(6) motion, a complaint must

---

[1] VA Case No. 62-62-6-1066472.

[2] *See* docket no. 1. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1441. *See* 28 U.S.C. § 1441(a) (providing that a civil action brought in state court may be removed to federal court "if the district courts of the United States have original jurisdiction" over the action).  The Campbells' case arises under 38 U.S.C. § 3732, a federal statute. This Court has original jurisdiction over cases that arise under the laws of the United States, and thus the case is removable.  This Court may also hear this case on the basis of diversity jurisdiction.  *See* 28 U.S.C. § 1332 (conferring original district court jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000).  The Campbells are citizens of Texas, and Defendant is a citizen of South Dakota.  *See* Docket no. 1 (stating that the Campbells are citizens of Texas and clarifying that Wells Fargo's place of incorporation and association is South Dakota); *see also Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) (holding that a national bank is a citizen of the state in which its main office, as set forth in its articles of association, is located). The amount in controversy in this case also exceeds $75,000.  *See Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338 (5th Cir. 2013) (holding that for cases in which the plaintiff seeks to enjoin a foreclosure sale, the value of the property represents the amount in controversy).  Diversity and federal question jurisdiction are proper here.

contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*.

### III.     ANALYSIS

The Campbells allege in their state court petition that Wells Fargo did not properly notify the VA before foreclosing the Property as required by 38 U.S.C §§ 3732 (a)(1) and (c)(3)(A). The Campbells also argue 28 U.S.C § 3732 (a)(5) required Wells Fargo to inform the VA after the Campbells tendered a payment after notice of default and that payment was rejected. In order to enforce any part 28 U.S.C § 3732, the Campbells must have a private right of action. Private rights of action in federal statutes are either express or implied. *See Franklin v. Gwinnett Cnty. Pub. Sch*., 503 U.S. 60, 71, 112 S. Ct. 1028, 1035 (1992); *Louisiana Landmarks Soc., Inc. v. City of New Orleans*, 85 F.3d 1119, 1122 (5th Cir. 1996). The Campbells do not argue for, and the Court does not see, an express private right of action in 38 U.S.C § 3732. Courts should be cautious in implying a federal private right of action where the plaintiff would have adequate state remedies. *See Alexander v. Sandoval,* 532 U.S. 275, 287, 121 S. Ct. 1511, 1520 (2001). A plaintiff asserting an implied private right of action has a "relatively heavy burden of demonstrating that Congress affirmatively contemplated private enforcement when it passed the relevant statute." *Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. & Urban Dev.*, 980 F.2d 1043, 1053 (5th Cir. 1993) (quoting *Victorian v. Miller*, 813 F.2d 718, 721 (5th Cir. 1987) (en banc)).

In *Cort v. Ash*, the Supreme Court outlined the four factors courts should use to determine whether a private right of action is implied in a federal statute: 1) whether this plaintiff is a member of the class that the statute was intended to benefit; 2) whether there is any evidence

of legislative intent, either explicit or implicit, to create a private right of action; 3) whether implying a private right of action is consistent with the legislative scheme; and 4) whether this cause of action is one traditionally relegated to state law and for which state law provides adequate remedies.  422 U.S. 66, 78, 95 S.Ct. 2080, 2087 (1975); *Louisiana Landmarks*, 85 F.3d at 1122–23.

The Fifth Circuit has never addressed the issue presented directly.  Other circuit courts found § 3732's predecessor, 38 U.S.C. § 1816(a) (renumbered in 1988),[3] did not imply a private cause of action for the veteran-borrower against a lender.  *See, e.g.*, *Simpson v. Cleland*, 640 F.2d 1354, 1360 (D.C. Cir. 1981) (discussing § 3732's predecessor, 38 U.S.C. § 1816(a)).  The Court begins the *Cort* analysis with the first factor: whether the Campbells are members of the class that the statute was intended to benefit.

Section 3732 is intended to protect the government's interests, not borrowers. While acknowledging the statute is part of an overall scheme to encourage lending to veterans to help them afford homes, courts determined borrowers were not a class § 1816(a) was intended to protect.  *Rank v. Nimmo*, 677 F.2d 692, 697 (9th Cir. 1982).  Instead, § 1816(a) was passed "solely in the interest of the government . . . not defaulting obligors." *Gatter v. Nimmo*, 672 F.2d 343, 347 (3d Cir. 1982) (interpreting 38 U.S.C. § 1816(a)).  Indeed, § 3732 discusses interactions between lenders and the VA for the government's protection.  *See, e.g.*, 38 U.S.C. § 3732 (a)(2)(B) ("[T]he Secretary may pay the holder of the obligation the unpaid principal balance of the obligation due, plus accrued interest . . . but only upon the assignment, transfer, and delivery to the Secretary . . . of all rights, interest . . . with respect to the housing loan."); 38 U.S.C. § 3732 (c)(6) ("[I]f the holder of the defaulted loan does not acquire the property securing the

---

[3] Note that the current 38 U.S.C. § 1816 grants the Secretary of Veterans Affairs the power to promulgate regulations, and is not at issue this case.  The Court will refer to the relevant predecessor statute as § 1816(a) for clarity's sake, because the current § 1816 does not have a sub-section (a).

loan at the liquidation sale, the liability of the United States under the loan guaranty under this chapter shall be limited.").  Borrowers are rarely considered in the statute, and when they are, it is only as passive parties.[4]  *See, e.g.*, 38 U.S.C. § 3732 (a)(4)(A) (describing the counseling the Secretary must give the borrower upon notification of foreclosure).  The Campbells, as borrowers, are not in the class of people § 3732 is intended to protect.

Second, the Court analyzes Congressional intent.  The Fifth Circuit considers Congressional intent the "touchstone" of the *Cort* analysis.  *Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 522 (5th Cir. 2002).  To determine Congressional intent, courts first look to the statutory text's plain-language meaning.  "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."  *Salazar v. Maimon*, 750 F.3d 514, 518 (5th Cir. 2014) (quoting *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005)).  When a statute is ambiguous, a court may then look to legislative history, but is to do so cautiously.  *Int'l Bhd. of Elec. Workers, Local Union No. 474, AFL-CIO v. N.L.R.B.*, 814 F.2d 697, 708 (D.C. Cir. 1987) ("[A]lthough legislative history may give meaning to ambiguous statutory provisions, legal principles may not be gleaned solely from legislative history that has no statutory reference point.").  "'Absent a clearly expressed legislative intention to the contrary, [statutory] language must ordinarily be regarded as conclusive.'"  *Boureslan v. Aramco*, 857 F.2d 1014, 1019 (5th Cir. 1988) (quoting *Escondido Mut. Water Co. v. La Jolla Indians*, 466 U.S. 765, 772, 104 S.Ct. 2105, 2110 (1984)).

The plain-language of the statutory text in question does not indicate a private right of action might be implied.  *See* 38 U.S.C. § 3732.  The Campbells attempt to bring their claim

---

[4] The Fifth Circuit similarly declined to find an implied private right of action for borrowers in for United States Housing and Urban Development statutes and regulations because they deal with relations between lenders and the government.  *Leggette v. Washington Mut. Bank, FA*, No. 3:03–CV–2909–D, 2005 WL 2679699, at *3 (N.D. Tex. Oct.19, 2005) (citing *Roberts v. Cameron–Brown Co.*, 556 F.2d 356, 360 (5th Cir. 1977)).

under §§ 3732 (a)(1), (c)(3)(A), and (a)(5).  Section 3732 (a)(1) reads, in relevant part, "In the event of default in the payment of any loan guaranteed under this chapter, the holder of the obligation shall notify the Secretary of such default."  Section 3732 (c)(3)(A) continues, "Before carrying out a liquidation sale of real property securing a defaulted loan, the holder of the loan shall notify the Secretary of the proposed sale.  Such notice shall be provided in accordance with regulations prescribed by the Secretary to implement this subsection."  Section 3732 (a)(5) states, "In the event of default in the payment of any loan guaranteed or insured under this chapter in which a partial payment has been tendered by the veteran concerned and refused by the holder, the holder of the obligation shall notify the Secretary as soon as such payment has been refused."  Again, nothing on the face of the statutory text in question indicates the borrower has a cause of action against the lender for violating these clauses.  Reading § 3732 as a whole, the vast majority of it discusses the interaction of the federal government and lenders, and those parties' rights as to each other.  The Court thus interprets §§ 3732 (a)(1), (c)(3)(A), and (a)(5) as intended to put the government on notice for the benefit of the government and to protect the government's interests, not as an additional barrier to foreclosure for the borrower's benefit.

Further, reading the statute in context with the rest of the Veteran's Benefits laws in Title 38, other types of remedies than a private cause of action for borrowers against lenders are contemplated.  For example, 38 U.S.C. § 3722 (c)(3)(D) contemplates fines for lenders who do not comply with the Act and related regulations.  In addition, 38 U.S.C. § 3704 (d) provides the federal government the means to enforce regulatory provisions by allowing the Secretary of Veterans Affairs to pause or stop guaranteeing loans by a certain lender.  These alternative remedies are in the same vein as those the Fifth Circuit has found preclude implying a private right of action in a statute.  *Casas*, 304 F.3d at 522–23 (quoting *Alexander*, 532 U.S. at 290, 121

S.Ct. at 1521–22 ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.")).

Legislative history might overcome silence or slight ambiguity in the statutory text and structure if the history is clearly contradictory to a court's interpretation.  The legislative history here is not clearly contradictory.  Courts found the legislative intent and history of § 1816(a), and the underlying Title 38, did not support a private cause of action in § 1816(a).  *See Simpson*, 640 F.2d at 1360 (dismissing a handbook issued by the VA as irrelevant, adding the court could not find "any statutory language or legislative history which even arguably indicates legislative intent to establish a private right of action in a case such as this").  This Court finds, and the Campbells present, no new legislative history for § 3732 that would lead it to a different conclusion than that of the DC Circuit in *Simpson*, or of the Ninth Circuit, when they found no legislative history to support a private right of action for § 1816(a).  *Rank*, 677 F.2d at 697.

Third, a private right of action is inconsistent with the legislative scheme.  Congress' intent for § 3732 is to encourage lending to veterans by creating a scheme to guarantee the loans.  *Id*.  The statute is not intended to provide veterans a right to prevent foreclosure sales when they are in default.  *See Brown v. First Tennessee Bank Nat. Ass'n*, 753 F. Supp. 2d 1249, 1255 (N.D. Ga. 2009).  To the contrary, the statute creates a legislative scheme to best secure the lender its money and protect the government's interests when a borrower defaults.  Implying a private cause of action for the borrower to insert himself into a very specific process for foreclosure that does not contemplate his participation is contrary to the legislative scheme.

Lastly, "mortgage foreclosure has traditionally been a matter for state courts and state law."  *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 361 (5th Cir. 1977).  State law provides adequate remedy in the foreclosure context that it would be inappropriate for federal courts to

imply a cause of action in a federal statute where one is not expressly created. *See Simpson*, 640 F.2d at 1630.

The Court finds that none of the four *Cort* factors weighs in favor of implying a private right of action in 38 U.S.C. § 3732. The Court concludes that the Campbells have not met their relatively heavy burden to show § 3732 has an implied private right of action for veteran-borrowers against lenders. Wells Fargo's motion to dismiss is therefore granted because the Campbells cannot enforce their claims with a private cause of action.

## IV.   CONCLUSION

For all of these reasons, Defendant's motion to dismiss (docket no. 6) is GRANTED. Plaintiffs' petition is DISMISSED WITH PREJUDICE. The Clerk is directed to enter final judgment pursuant to Rule 58 and to close this case. Defendant is awarded costs of court and shall file a Bill of Costs pursuant to the Local Rules.

It is so ORDERED.

SIGNED this 16th day of October, 2014.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE